## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

Civil No. 15-_____

JOANNA DENSMORE,                )
JULIA SHRIVER,                  )
KRISTINA FUCCILLO,              )
                                )
       Plaintiffs,              )
                                )
       v.                       )
                                )
COLBY-SAWYER COLLEGE,           )
                                )
       Defendant.               )

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, JoAnna Densmore, Julia Shriver, and Kristina Fuccillo, bring this action against Defendant Colby-Sawyer College, and allege as follows:

### <u>PARTIES</u>

1.    Colby-Sawyer College ("CSC") is a private post-secondary educational institution organized and existing under the laws of New Hampshire. CSC's campus is located in New London, New Hampshire.

2.    JoAnna Densmore ("JoAnna") resides in New Gloucester, Maine and is a citizen of Maine.

3.    Julia Shriver ("Julia") resides in Mansfield, Massachusetts and is a citizen of Massachusetts.

4.    Kristina Fuccillo ("Kristina") resides in Smithfield, Rhode Island and is a citizen of Rhode Island.

5.      At all times relevant to this Complaint, JoAnna, Julia, and Kristina were students in CSC's undergraduate nursing program, to which they were admitted as members of the class of 2016.

## JURISDICTION

6.      The Court has original subject matter jurisdiction under 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties, and the matter in controversy, without interest and costs, exceeds the sum or value of $75,000.

7.      Joinder of Plaintiffs' claims against CSC is permissible under Rule 20 of the Federal Rules of Civil Procedure as all Plaintiffs assert a right to relief "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and questions "of law or fact common to all plaintiffs will arise in the action."

8.      On information and belief, the Court has personal jurisdiction of CSC as it has purposefully availed itself of conducting business in Maine by recruiting Maine residents as students, advertising its educational programs in Maine, and maintaining a website accessible to Maine residents.  In addition, JoAnna's claims against CSC for breach of contract and deceptive trade practices in violation of the Maine Unfair Trade Practices Act arise out of business conducted by CSC in Maine and with a Maine citizen.

9.      This Court's exercise of personal jurisdiction over CSC comports with fair play and substantial justice.  By targeting Maine citizens and then knowingly entering into an ongoing business relationship with a Maine resident, CSC availed itself of the

protections and benefits of Maine law such that it should expect to submit to litigation in this forum.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim asserted in this action occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

11.     Nursing education at CSC consists of a four year educational program leading to a Bachelor of Science degree with a major in Nursing.

12.     In the spring of their sophomore year, academically-eligible CSC nursing students typically complete their first clinical course, *Health Assessment and Fundamental Nursing Skills* (NURS 230), at the nearby Dartmouth-Hitchcock Medical Center ("Dartmouth-Hitchcock").

13.     The NURS 230 course has three components:  two hours per week of classroom instruction, with associated reading, writing, and study; four hours per week of nursing laboratory work; and eight hours per week of clinical internship work (conducted on a single day of each week).

14.     The clinical component of NURS 230 is graded on a pass-fail basis.

15.     Pursuant to CSC's published course syllabus, NURS 230 students are evaluated as follows:  "students will receive weekly clinical evaluations of performance as well as for written assignments . . . .  Additionally, students will also be evaluated at mid-term and at the conclusion of the course."

3

16.     The rating scale that CSC uses has three ranks:  0 ("significant concerns for safety"), 1 ("some concerns, but not unsafe"), and 2 ("performing as expected for this level").

17.     To pass the clinical portion of NURS 230, students must achieve a "2" for all items in their final "summative" evaluation at the conclusion of the course.

18.     On information and belief, due to its arrangement with Dartmouth-Hitchcock, CSC limits participation in its program for nursing majors to only 36 students per year, or per "cohort."

19.     CSC distributed to Plaintiffs and other prospective class of 2016 nursing students a document entitled "Potential Questions/ Responses for Entering Students Intending to Major in Nursing at Colby-Sawyer College, Fall 2012."  That document states "there are 36 available positions in the program."  In addition, CSC's Dean Taylor reiterated the 36-student per cohort limit on numerous occasions, including during a student-parent meeting held on August 13, 2014.

20.     Contrary to CSC's representation to Plaintiffs, there are in reality fewer than 36 positions per class in CSC's nursing program, because each year, CSC offers some of the 36 positions to nursing students who had not met the requirements in all areas the prior year.  For the Class of 2016, for instance, there were only 34 available positions; two positions had been awarded to students from the Class of 2015.

21.     Despite the stated limitation of 36 positions per year, CSC did not adhere to this limit in admitting students as nursing majors in the class of 2016.

22.     For the Class of 2016, CSC admitted approximately 100 intended nursing majors.  Of these intended nursing majors, 51 remained academically eligible and fully qualified to continue in CSC's Nursing program midway through their sophomore year (2013-2014).  All three plaintiffs qualified academically and were part of this group.

23.     All eligible nursing majors in the Class of 2016 as of January 2014 were next required to take and pass NURS 230.

24.     CSC typically offers NURS 230 as a sophomore spring semester course.

25.     Realizing that it had a numbers problem with the Class of 2016, CSC offered 36 students the opportunity to take NURS 230 during the spring 2014 semester, while offering alternative paths to the remaining 15 eligible nursing students.

26.     CSC offered the following three alternative options:  (1) in lieu of attending the 2014 spring semester, to participate in a 12-week summer session running from mid-May through mid-August 2014 (to take NURS 230 along with its two co-requisite courses, microbiology and pharmacology); (2) to enroll in the 2014 spring semester to complete the two co-requisite courses, then return in the 2014 summer session only for NURS 230; or (3) to join the following year's cohort (Class of 2017) and take NURS 230 during the spring 2015 semester, thereby delaying graduation by a full year.

27.     CSC indicated that standard tuition and fees would apply to the first option. For the second option, in addition to the standard tuition and fees for the spring semester, CSC required students to pay an additional $1,800 for summer course tuition, as well as $100 per week room and board for the 13-week summer session.

28.     CSC represented that it was offering the summer course option for NURS 230 "in an effort to keep all qualified nursing students on track for a 4 year graduation." In fact, this was a misrepresentation.

29.     JoAnna, Julia, and Kristina were eligible nursing students to whom CSC offered the alternative options described above.  All three wished to continue as nursing majors and were qualified to do so.  Based on CSC's representations, they chose option number 2, as did the twelve other academically-eligible nursing students in their class. They enrolled in the 2014 spring semester to take courses in microbiology and pharmacology, and then returned for the summer session at an extra cost to complete NURS 230.

30.     Each of the plaintiffs paid CSC the additional $1,800 tuition for the summer course.  Julia and Kristina also paid $1,200 for room and board costs for the 13-week summer session.  Although promised, no meals were provided to Plaintiffs by CSC.

31.     CSC assigned all three Plaintiffs to a group consisting of five summer nursing students who had enrolled for NURS 230.

32.     CSC held the "Major Acceptance Ceremony" for all 51 eligible nursing majors on January 29, 2014.  For this ceremony, CSC provided an official CSC Nursing name tag pin only to the 36 students selected to take NURS 230 in the spring 2014 semester.  The remaining 15 academically-eligible nursing majors—including all three Plaintiffs—were asked to write their names on a temporary stick-on label to wear during the ceremony.

33.     When CSC photographed the eligible nursing majors, it included only the 36 student taking NURS 230 in the spring 2014.  The remaining 15 eligible students—including all three Plaintiffs—were asked to step aside while the photograph was taken.

34.     Although the 36 spring semester students took NURS 230 along with the two other foundational courses (microbiology and pharmacology), plus one elective course, CSC informed those students taking only NURS 230 during the summer of 2014—including all three Plaintiffs—that they would have no time for jobs or any other pursuits while taking NURS 230 as their only course.  This conflicted with written materials from CSC stating that the summer NURS 230 classes would be held only on Tuesdays, Wednesdays, and Thursdays so as to permit the students to hold jobs.

35.     CSC assigned Amanda B. Fay, RN, MSN, as the professor designated to teach the clinical portion of the summer 2014 NURS 230 course for Plaintiffs' five-student group.

36.     The NURS 230 summer course began on May 19, 2014.

37.     Due to Professor Fay's vacation at the beginning of the summer clinical session, CSC assigned a substitute nursing professor, Joan G. Loftus, DNP, RN, to provide Plaintiffs' instruction in Professor Fay's absence.  Professor Loftus has over eight years of clinical teaching experience, while Professor Fay has far less clinical teaching experience.

38.     The students' clinical rotations at Dartmouth-Hitchcock began on Thursday, June 12, 2014, after approximately four weeks of preparatory classroom and laboratory work.

7

39.     The clinical rotations portion of NURS 230 met thereafter on every Thursday from 6:45 am to 3:30 pm.

40.     Professor Loftus led the Plaintiffs' instructional group for all of the preparatory work and for the first three weeks of the clinical rotations at Dartmouth-Hitchcock (June 12, June 19, and June 26, 2014).

41.     During her time as the NURS 230 instructor, Professor Loftus provided positive feedback to JoAnna, Julia, and Kristina.  She told each of the Plaintiffs verbally and in writing that they "should be proud of what [they had] done" and commended them all for their "great work."  Professor Loftus also informed all three Plaintiffs in writing that other faculty members were "impressed" by their performance.

42.     The summer NURS 230 program included an instructional break from June 30, 2014 through the July 4, 2014 holiday weekend.

43.     Professor Fay took over instructional responsibilities for Plaintiffs' group in NURS 230 after the break, on July 8, 2014.  She continued in this capacity for the remaining six weekly clinical rotations at Dartmouth-Hitchcock.

44.     On information and belief, once Professor Fay became the instructor, she held the summer students in Plaintiffs' group to a much higher standard of performance than those nursing students who had completed the same course during the spring semester.  Her requirements differed greatly from those utilized by Professor Loftus and, on information and belief, those utilized in the other summer NURS 230 group led by Professor Nolette.

45.     CSC advertises itself as an accredited institution that adheres to the standards of the Commission on Collegiate Nursing Education.  One of those standards is that grading must be consistently applied.  In violation of this standard, there were significant differences between Professor Fay's and Professor Nolette's grading practices and requirements.  For example, Professor Nolette provided formative (mid-term) evaluations on July 17, 2014, which was one week earlier than Plaintiffs' formative evaluations.

46.     On July 10, 2014, her first day as Plaintiffs' clinical instructor, Professor Fay informed Plaintiffs and the other students in their group that they were significantly behind.  This statement directly contradicted the feedback provided to the group by Professor Loftus at the conclusion of the previous clinical session on June 26, 2014.

47.     On July 17, 2014, the next clinical instruction day, Professor Fay refused to allow the five students in her group to complete their day at Dartmouth-Hitchcock.

48.     Professor Fay sent Kristina home before the July 17 session started, allegedly for failing to note a patient's medical history of hypertension as being relevant to a bladder cancer diagnosis in her pre-clinical preparatory work.  Even though Kristina knew and successfully explained the facts regarding hypertension to Professor Fay, there was no opportunity for remediation.  Professor Fay subsequently termed this alleged "omission" an unsafe practice and issued Kristina a clinical warning, even though it had resulted in no danger to the patient and had been contrived for the purpose of failing Kristina that day.

49.     Professor Fay also issued an alleged "clinical warning" to the remaining four students in the group and sent them home.  Professor Fay's pretextual justification for issuing these "clinical warnings" was that the students had failed to practice certain documentation skills prior to the July 17 clinical day, even though she admitted having given them the wrong username and password for the website they needed to access to practice documentation skills.

50.     Upon a student's receipt of a clinical warning, CSC's NURS 230 course syllabus requires that "the faculty member along with the student will develop a remediation plan for improvement."

51.     Professor Fay, however, neither developed nor provided a remediation plan for any of the five students in her group, including the three Plaintiffs.  She also failed to allow any of the students in her group to make up the clinical time they had been denied at Dartmouth-Hitchcock (and for which all had paid tuition).

52.     The next week, on July 24, 2014, Professor Fay met with JoAnna, Julia, and Kristina for their midterm "formative" evaluations.  Professor Fay already had completed all of their evaluation reports prior to her arrival that day.  At most, she had based her ratings on data from the one-and-a-half clinical days on which she had supervised Plaintiffs at Dartmouth-Hitchcock (July 10 and part of July 17, although she had not permitted Kristina to participate at all on July 17).

53.     Despite verbally telling Plaintiffs that their clinical performance was where it should be given their levels of experience, Professor Fay rated all three plaintiffs with scores lower than "2" on all six items listed on their formative evaluation reports.  She

10

gave JoAnna five scores of 1 and one score of 0.  She gave Julia three scores of 1 and three scores of 0.  She gave Kristina one score of 1 and five scores of 0.  A score of zero denotes "significant safety concerns."

54.     Kristina noted several inaccuracies in her formative evaluation and attempted to address these issues with Professor Fay.  While Professor Fay admitted to at least one error, she refused to change Kristina's formative scores.

55.     JoAnna also noted several inaccuracies in an email from Professor Fay dated July 30, 2014 and in comments made during a 1:1 evaluation on July 31, 2014. The email stated that, during validation on July 29, 2014, JoAnna had been unable to describe infiltration and how it manifests.  Professor Fay, however, had not performed JoAnna's validation on infiltration.  In fact, JoAnna's validation on infiltration was performed by Professor Vebell, and JoAnna had passed this part of the validation.  In an email dated August 2, 2014, Professor Fay admitted to making an "erroneous comment" during the 1:1 evaluation on July 31, 2014 after being questioned by JoAnna.

56.     Upon completion of the mid-term formative evaluations, the box indicating "at risk to fail" was not checked off for either JoAnna or Julia.  Professor Fay indicated to Kristina, however, that she was at risk to fail.

57.     CSC's NURS 230 course syllabus requires that, if a student does not receive at least a "2" on the midterm evaluation items, "a plan for improvement will be jointly constructed by the student and the clinical instructor to assist the student to meet the goal by the end of the course."

58.     Despite her low formative ratings of Plaintiffs, Professor Fay did not work with any of the students in her group to construct or implement a "plan for improvement to assist the student to meet the goal by the end of the course."

59.     On July 24, 2014, in spite of the poor formative evaluations issued to the Plaintiffs, Professor Fay verbally told each of them that they had performed well that day. She stated that, if they kept it up, they would pass the clinical portion of the NURS 230 course.

60.     Then, on July 30, 2014, before the Plaintiffs' next scheduled clinical instruction day and without any advanced warning, Professor Fay informed all of her students, including the three Plaintiffs, that each was at risk to fail the clinical component of the course.

61.     Shortly thereafter, each Plaintiff received formal notification that she would fail the clinical portion of NURS 230.  Subsequent to this notification, all three Plaintiffs were instructed not to attend the remaining clinical or laboratory sessions, even though they had paid for this instruction.  Professor Fay ultimately failed four of the five students in her group, including all three Plaintiffs.

62.     The course syllabus states that the NURS 230 students are to be evaluated "at the conclusion of the course."  This final "summative" evaluation for the course is required to be recorded on a form that has a signature line for both faculty and student.

63.     Professor Fay never invited JoAnna, Julia, or Kristina to attend a meeting to review their summative final evaluation reports with her.  In fact, Plaintiffs did not know

that Professor Fay had completed a summative evaluation form for them until each of them requested the records in their files in late August 2014.

64.     As a result, none of the Plaintiffs received an opportunity to review or sign the summative final evaluation forms that Professor Fay had completed and placed in their academic files.

65.     In fact, JoAnna has documentation showing that the summative evaluation originally placed in her file was undated and unsigned, and that Professor Fay later altered the original record by backdating the evaluation.

66.     On information and belief, Professor Fay's actions against Plaintiffs were part of a strategy by CSC to "thin the herd" and reduce the number of nursing majors in the Class of 2016 to a manageable level before the start of that class's junior year.  This occurred despite Plaintiffs' payment of extra tuition for the summer NURS 230 course and their hard work that summer in an attempt to complete the course and move on as a nursing major with their peers.

67.     Professor Fay's actions against the Plaintiffs went beyond merely failing them in NURS 230.  Contrary to CSC's Code of Community Responsibility, she created a hostile environment that was not conducive to learning and was emotionally harmful to the Plaintiffs.

68.     By the fall semester of 2014, only 36 eligible nursing majors remained in CSC's program for the Class of 2016.  Of the 15 students admitted to the summer session for NURS 230, eleven students—including all three Plaintiffs—had received insufficient

grades to continue, been induced to change their majors to remain at CSC, or had opted to leave the nursing program.

69.     Following internal CSC procedures, JoAnna, Julia, and Kristina each appealed the failing clinical grades they received in NURS 230.  CSC denied each of their appeals.  In two cases, the denial letter was dated earlier than the student's actual submission of her appeal.

70.     CSC offered JoAnna, Julia, and Kristina only the option to retake NURS 230 during the spring 2015 semester, which would require each of them to pay additional tuition, room, and board costs, and delay the completion of their nursing education.

71.     As NURS 230 is a prerequisite to all of the remaining clinical courses in the CSC Nursing Program, students may not advance as a nursing major without passing all aspects of the course.

72.     By virtue of their failing clinical grade in NURS 230, Plaintiffs' academic progress in nursing was brought to a standstill.  Even if they had accepted CSC's offer to retake the course during the spring 2015 semester, their graduation would have been delayed for at least one year.

73.     CSC made unfair and deceptive representations to JoAnna, Julia, and Kristina when it stated that the summer program for NURS 230 was being offered "in an effort to keep all qualified nursing students on track for a four year graduation."  In reality, CSC had a fixed student ceiling for nursing majors in each session and could not accommodate all of the academically eligible nursing majors in the Class of 2016 during their junior and senior years.  This material misrepresentation misled Plaintiffs to

continue as eligible students in CSC's nursing program by participating in a summer

clinical program offering designed primarily as a pretext to deter their future continuation

as nursing majors at CSC, all to their detriment.

## <u>COUNT I</u>
### (For All Plaintiffs:  Deceptive Trade Practices in Violation of the
### New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2)

74.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 73.

75.     Chapter 358-A:2 of the New Hampshire Revised Statutes Annotated

provides:  "It shall be unlawful for any person to use any unfair method of competition or

any unfair or deceptive act or practice in the conduct of any trade or commerce within

this state.  Such unfair method of competition or unfair or deceptive act or practice shall

include, but is not limited to . . . [r]epresenting that goods or services have sponsorship,

approval, characteristics, ingredients, uses, benefits, or quantities that they do not have

. . . ; [and] [a]dvertising goods or services with intent not to supply reasonably expectable

public demand, unless the advertisement discloses a limitation of quantity . . . ."

76.     By virtue of the foregoing, Defendant CSC violated Chapter 358-A of the

New Hampshire Revised Statutes Annotated by engaging in deceptive practices and

misrepresenting the availability and nature of the services offered in its nursing education

program so as to cause pecuniary loss and other damages to each of the Plaintiffs.

## COUNT II
**(For JoAnna Densmore:  Deceptive Trade Practices in Violation of the
Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, § 207)**

77.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 76.

78.    The Maine Unfair Trade Practices Act ("UTPA") provides that "unfair or

deceptive acts or practices in conduct of any . . . commerce are declared unlawful."

Me. Rev. Stat. tit. 5, § 207.

79.    By virtue of the foregoing, Defendant CSC violated the UTPA by engaging

in deceptive practices and misrepresenting the availability and nature of the services

offered in its nursing education program so as to cause JoAnna pecuniary loss and other

damages.

## COUNT III
**(For Julia Shriver:  Deceptive Trade Practices in Violation of the
Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A, § 2)**

80.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 79.

81.    The Massachusetts Consumer Protection Act, also known as Chapter 93A,

provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in

the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws

Ann. Ch. 93A, § 2.

82.    By virtue of the foregoing, Defendant CSC violated Chapter 93A of the

Massachusetts Consumer Protection Act by engaging in deceptive practices and

misrepresenting the availability and nature of the services offered in its nursing education

program so as to cause Julia pecuniary loss and other damages.

16

<u>COUNT IV</u>
**(All Plaintiffs:  Breach of Contract)**

83.     Plaintiffs repeat the allegations contained in Paragraphs 1 through 82.

84.     CSC has a contractual obligation to its students to abide by its written guidelines, policies, and procedures as contained in written materials distributed to its enrolled students.  These written guidelines, policies, and procedures include CSC's published course syllabus for NURS 230.

85.     The NURS 230 course syllabus requires, whenever a student receives a clinical warning, that "the faculty member along with the student will develop a remediation plan for improvement."  Professor Fay did not develop or provide a remediation plan after issuing clinical warnings to JoAnna, Julia, and/or Kristina, nor did she allow them to make up the July 17, 2014 clinical session she wrongfully canceled.

86.     The NURS 230 course syllabus further requires that, if a student does not receive at least a "2" on her midterm "formative" evaluation, then "a plan for improvement will be jointly constructed by the student and the clinical instructor to assist the student to meet the goal by the end of the course."

87.     Following Plaintiffs' formative assessments, however, CSC neither constructed nor implemented any plan for their improvement so as to enable them "to meet the goal by the end of the course."

88.      The NURS 230 course syllabus also states that students are to be evaluated "at the conclusion of the course."

89.     Although the final summative evaluation for NURS 230 is recorded on a form with a signature line for both faculty and student, Professor Fay never invited JoAnna, Julia, and Kristina to attend a meeting to review their summative final evaluations at the end of the course.  They were provided with no opportunity to review or sign the summative final evaluation form that was placed in their academic files.

90.     In addition, CSC directly promised Plaintiffs that their participation in the summer NURS 230 course would keep them on track for a four year graduation with a nursing degree.  CSC breached this promise by ensuring through its actions during the summer program that the number of successful participants was limited to the 36-student cap.

91.     By virtue of the foregoing, CSC breached various promises it made to Plaintiffs and acted in a manner that was arbitrary and capricious or in bad faith.

92.     As a direct and proximate result of this breach, JoAnna, Julia, and Kristina have suffered and will continue to suffer economic damages.  All three Plaintiffs incurred significant expense to pay the course tuition and the cost of room and board for the summer session.  Further, the improper failing grades that each Plaintiff received in the clinical portion of NURS 230 are likely to prevent, hinder, or delay their ability to transfer to a different nursing program or otherwise continue their post-secondary education to become licensed nurses, thereby causing each of them additional economic damages.

## COUNT V
### (All Plaintiffs: Quasi Contract)

93.     Plaintiffs repeat the allegations contained in paragraphs 1 through 92.

94.      Plaintiffs conferred a benefit upon CSC by paying the costs for the summer course option for NURS 230.  All three plaintiffs paid the $1,800 tuition.  In addition, Plaintiffs Julia and Kristina paid CSC the cost of room and board for the summer session.

95.     Plaintiffs conferred this benefit upon CSC because CSC promised Plaintiffs that their participation in the summer NURS 230 course would keep them on track for a four year graduation with a nursing degree.

96.     CSC appreciated and accepted the benefit even though it knew or should have known that its 36-student cap prevented it from accommodating all academically eligible nursing students, including Plaintiffs.  Realizing it had an excess of academically eligible nursing majors, CSC failed the Plaintiffs in bad faith to ensure that the number of participants in its Class of 2016 nursing program did not exceed the clinical program's capacity.

97.     Under these circumstances, it would be inequitable for CSC to retain the benefit.

## COUNT VI
### (All Plaintiffs: Intentional Misrepresentation)

98.     Plaintiffs repeat the allegations contained in paragraphs 1 through 97.

99.     CSC represented to Plaintiffs that it was offering the summer course option for NURS 230 "in an effort to keep all qualified nursing students on track for a four year graduation."  In fact, this was a misrepresentation.  The number of academically-qualified

students in CSC's Class of 2016 nursing program greatly exceeded the program's 36-student cap.  Contrary to its representation to Plaintiffs, CSC was unable to accommodate all the academically-qualified students in its four year nursing program.

100.    CSC made this misrepresentation with knowledge of its falsity or in reckless disregard of whether it was true or false for the purpose of inducing Plaintiffs to enroll in the summer course option for NURS 230.

101.    Plaintiffs justifiably relied on this misrepresentation to their detriment when they enrolled in and paid for the summer course option for NURS 230.

## COUNT VII
### (All Plaintiffs: Negligent Misrepresentation)

102.    Plaintiffs repeat the allegations contained in paragraphs 1 through 101.

103.    CSC had a pecuniary interest in the enrollment of Plaintiffs in the summer course option for NURS 230.

104.    CSC supplied false information to the Plaintiffs when it stated that it was offering the summer course option for NURS 230 "in an effort to keep all qualified nursing students on track for a four year graduation."

105.    CSC failed to exercise reasonable care or competence to verify that it would in fact be able to keep all academically eligible students on track for a four year graduation, especially in light of the program's 36-student cap.

106.    Plaintiffs justifiably relied upon this false information when they enrolled in and paid the costs for the summer course option for NURS 230.

20

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor against Defendant and award them:

(a)  An order requiring CSC to remove the failing grade for NURS 230 from their respective transcripts;

(b)  An award of compensatory and exemplary damages against CSC in an amount that is reasonable in the premises, and enhanced damages as permitted by any applicable state statute;

(c)  An award of costs, including recovery of reasonable attorney's fees and litigation expenses; and

(d)  Such further relief as the Court may deem just and proper.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL CLAIMS IN THEIR COMPLAINT SO TRIABLE AS OF RIGHT.**

Dated:  August 24, 2015.

/s/ Richard L. O'Meara
Richard L. O'Meara

/s/ Caroline Y. Jova
Caroline Y. Jova

Counsel for Plaintiffs JoAnna Densmore, Julia Shriver, and Kristina Fuccillo.

MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME  04104-5085
(207) 773-5651